UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES W. MARTIN, Individually and as
Owner of Mastiff Contracting, LLC,

                              Plaintiff,

                                                              6:15-CV-0154
v.                                                            (GTS/TWD)

CHRISTOPHER W. HELLMICH; and
MASTIFF CONTRACTING, LLC,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

JAMES W. MARTIN
  Plaintiff, *Pro Se*
1487 County Highway 10
Broadalbin, NY 12025

CHRISTOPHER W. HELLMICH
  Defendant, *Pro Se*
5753-G E. Santa Ana Canyon Road, Suite 512
Anaheim Hills, CA 92807

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

　　　Currently before the Court, in this *pro se* copyright infringement action filed by James

W. Martin, individually and as owner of Mastiff Contracting, LLC ("Plaintiff") against

Christopher W. Hellmich ("Hellmich") and Mastiff Contracting, LLC ("Mastiff"), is Hellmich's

motion to dismiss Plaintiff's Complaint, based on the doctrine of *res judicata*, pursuant to Fed. R.

Civ. P. 12(b)(6), or, in the alternative, to transfer venue of this action to the United States

District Court for the Central District of California pursuant to 18 U.S.C. § 1404(a).  (Dkt. No.

51.)  For the reasons set forth below, Hellmich's motion to dismiss is granted.

# I.  RELEVANT BACKGROUND

## A.  Plaintiff's Verified Complaint

Generally, Plaintiff's Verified Complaint alleges as follows.  (Dkt. No. 1, Attach. 1 [Plf.'s Verified Compl.].)  In 2009, Plaintiff, a New York resident, formed Mastiff, a New York corporation, to "engage in [the] business of creating, funding, [and] financing clean energy derived from the mechanisms and/or resources of [Plaintiff]."  (*Id.* at ¶¶ 1-2, 5.)  At some unspecified point in time, Hellmich, an attorney residing in California, was "introduced to Plaintiff, [his] agents, servants, and/or employees," and agreed to become a one-percent shareholder in Mastiff "for services rendered."  (*Id.* at ¶¶ 3, 6-8.)  As a result Hellmich assumed an obligation "to engage in fiduciary acts to protect" Mastiff, Plaintiff, and George Holley, Jr. ("Holley," whose identity is otherwise unclear from Plaintiff's Verified Complaint).  (*Id.* at ¶ 8.)

At some (again, unspecified) point in time, Hellmich, in violation of his fiduciary duties to Mastiff and its shareholders, as well as "the obligation to bring any dispute resolution in the State of New York," commenced an arbitration proceeding in California.  (*Id.* at ¶¶ 10-11.) Moreover, Hellmich "has used or has attempted to use the copy right and/or information or knowledge of the process to be marketed [and] created by [Plaintiff] to his own benefit" and has "upon information and belief . . . attempted to sell the product, a portion of Mastiff . . . and the technology."  (*Id.* at ¶ 13.)  The subject of the arbitration proceeding (as well as the source of Hellmich's "obligation" to bring it in New York State) is not clear from Plaintiff's Verified Complaint, nor is it clear whether Hellmich engaged in these acts before, after, or during the arbitration proceeding.

Based upon these factual allegations, Plaintiff appears to assert the following claims: (1) a claim for copyright infringement; (2) a claim for injunctive and declaratory relief, specifically, an order directing "Defendants . . . to cease and dismiss any action in any court, tribunal or arbitration outside the State of New York," and a declaratory judgment that any dispute resolution must be held in New York State Supreme Court, Fulton County; and (3) a claim that Hellmich breached his fiduciary obligations to Plaintiff, Mastiff, and "Plaintiff Holley" (who is not actually a party to this lawsuit). (*Id.* at ¶¶ 12-20.)[1]

**B.      Parties' Briefing on Hellmich's Motion to Dismiss**

**1.      Hellmich's Submissions in Support of His Motion**

**a.      Hellmich's Memorandum of Law**

Generally, in support of his motion to dismiss, Hellmich argues as follows: (1) Plaintiff's Verified Complaint must be dismissed pursuant to the doctrine of *res judicata* because (a) in a prior action, the United States District Court for the Central District Court of California, Southern Division, confirmed three arbitration awards against Martin (as well as respondents Mastiff, Holley, and Chelsey Stead Martin ["Stead Martin"]) and in favor of Hellmich, resulting in an adjudication on the merits, (b) the California action involved the same parties as the present action, and (c) in opposing confirmation of the third arbitration award, Plaintiff "practically

---

[1]      Confusingly, Plaintiff's Verified Complaint (filed when Plaintiff was represented by counsel) indicates in the caption that he (in his individual capacity and as the owner of Mastiff), is suing both Defendant Hellmich and Mastiff. (Dkt. No. 1, Attach. 1 [Plf.'s Verified Compl.].)  However, the factual allegations and claims contained in the Verified Complaint plausibly suggest that (1) while Martin purports to represent the interests of Mastiff, Mastiff itself is not truly a plaintiff or defendant in this case, and (2) Hellmich is a shareholder of Mastiff, and is being sued for, *inter alia*, an alleged violation of his fiduciary duties to Mastiff. (*Id.* at ¶¶ 1, 10.)

reiterated verbatim the claims" he asserts in this action, and, as a result, "actually litigated" the same claims in the California action; (2) alternatively, the Court should transfer this case to the United States District Court for the Central District Court of California, Southern Division, because (a) at the time this case was commenced, Hellmich resided (and still resides) within the Central District of California, and (b) the location of relevant documents, locus of operative facts, and convenience of witnesses weigh in favor of setting venue in California, given that (i) Plaintiff and Mastiff "routinely entered California to raise capital" to fund Mastiff's development, (ii) a "one-third principal owner and corporate officer" of Mastiff resides in Los Angeles, California, (iii) Plaintiff hired a California resident to serve as Mastiff's chairman of the board, (iv) Plaintiff sold equity to Hellmich and entered into a loan with another resident of Orange County, California, (v) Plaintiff's "principal investment banker" raising capital for Mastiff resides in Los Angeles, California, and (vi) the arbitration agreement between the parties states that it is governed by California law; and (3) the Court should award attorneys' fees and costs to Hellmich because California law requires the award of such fees and costs against a non-signatory to an arbitration agreement where the plaintiff (i.e., Hellmich in the California action) establishes alter ego liability of a non-signatory, as Hellmich has in proceedings that have been held between the parties in California.  (Dkt. No. 51, Attach. 1, at 3-8 [Hellmich's Memo. of Law].)

### b.    Submissions Related to Proceedings in California

With his memorandum of law, Hellmich filed numerous exhibits related to the proceedings in California, and the following information is derived from those documents and proceedings.

### i.      Loan Agreement

Hellmich and Mastiff (by Martin, its chief executive officer) entered into a "Promissory Note and Equity Agreement" ("Loan Agreement"), dated September 27, 2013, pursuant to which Mastiff promised to repay Hellmich $50,000, representing loan proceeds from Hellmich.  (Dkt. No. 51, Attach. 2 [Loan Agreement].)  The Loan Agreement provides that "[a]ny and all disputes arising from or related to this Agreement, or *the relationship of the Parties* . . . shall be resolved by arbitration conducted in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ."  (*Id.* at 2 [emphasis added].)  Moreover, the Loan Agreement provides that it "shall be governed by, and construed according to, the laws of the State of California, and the legal venue shall be Orange County, California."  (*Id.*)  *See also Hellmich v. Mastiff Contracting , LLC*, 14-CV-1354, 2015 WL 391989, at *1 (C.D. Cal. Jan. 27, 2015) (quoting the Loan Agreement).  Thereafter, Hellmich made (at least) three more loans to Mastiff.  *Hellmich*, 2015 WL 391989, at *2.

### ii.      Hellmich's Demand for Arbitration and First Arbitral Award

On July 9, 2014, Hellmich filed a demand for arbitration against Mastiff, Martin, and Holley, asserting five claims: (1) a claim for breach of contract against Mastiff (based on a failure to repay loans to Hellmich, including the loan pursuant to the Loan Agreement, totaling over $130,000); (2) a claim for declaratory relief against Mastiff; (3) a claim for Martin's violation of California's Unfair Competition Law against Mastiff; (4) a claim for fraud against Mastiff, Martin, and Holley, based on their "misrepresentations that Mastiff solely owned all of the intellectual property and their material omission of the fact that they never intended to agree to any investment that was not tied to" a transaction with David Maxwell, a "purported banker"

who "claimed access to secret sources of money . . ."; and (5) a claim for an accounting.

*Hellmich,* 2015 WL 391989 at *2. In August 2014, an arbitrator held a telephonic hearing and, thereafter, issued the first arbitral award in the case, a temporary restraining order pursuant to American Arbitration Association ("AAA") Rule 38. (Dkt. No. 51, Attach. 4 [Notice of Ruling and Order, dated 9/28/2014].) The first arbitral award, *inter alia*, ordered Mastiff and its owners, officers, directors, and employees to cease all commercial, monetary, banking, or securities transactions involving Maxwell, restrained Martin and Holley from exercising any managerial control over Mastiff, and permitted Martin to use Mastiff funds for the sole purpose of retaining counsel for Mastiff. (Dkt. No. 51, Attach. 4 [Notice of Ruling and Order, dated 9/28/2014].) *See also Hellmich,* 2015 WL 391989 at *3.

### iii. Second Arbitral Award

In September 2014, Hellmich filed a motion for a prejudgment writ of attachment, and, following telephonic hearings held in September and October 2014, the arbitrator issued the second arbitral award in the case, granting Hellmich's motion. (Dkt. No. 51, Attach. 5 [Right to Attach Order].) *See also Hellmich*, 2015 WL 391989 at *3-4. The second arbitral award authorized Hellmich to, among other things, (1) "attach, levy, and otherwise secure" respondents' property up to the value of $730,992.50 and (2) serve the order on "the proper authorities at the United States Patent and Trademark Office and/or the United States Copyright Office," and to attach any property belonging to Mastiff or Martin thereat. (Dkt. No. 51, Attach. 5, at ¶¶ 15-16, 19.) *See also Hellmich,* 2015 WL 391989 at *3. Moreover, the arbitrator concluded that he had jurisdiction over Martin and Holley in light of the "expansive provision in the parties['] arbitration agreement," which "conveyed to . . . the arbitrator . . . the power to resolve all

disputes related to the 'relationship of the parties,'" as well as the fact that "The Supreme Court and the Ninth Circuit have interpreted this terminology to encompass all disputes without exception." (Dkt. No. 51, Attach. 5, at ¶ 17.) *See also Hellmich,* 2015 WL 391989 at *4. The arbitrator also concluded that Martin and Holley were subject to the orders of th[e] arbitral [t]ribunal because . . . they have participated in the arbitration and failed to object to this [t]ribunal exercising jurisdiction over them . . . ." (Dkt. No. 51, Attach. 5, at ¶ 18.)

### iv.    Confirmation of First Two Arbitral Awards

On January 27, 2015, the United States District Court for the Central District of California confirmed the first two arbitral awards. *Hellmich,* 2015 WL 391989 at *5-7. In so doing, the Central District Court found that (1) Mastiff was a party to the Loan Agreement and Hellmich's claims were encompassed by the Loan Agreement's provision that it covers "[a]ny and all disputes arising from or related to this Agreement or the relationship of the parties," and (2) because Martin and Holley were both agents of Mastiff (based on Martin's execution the Loan Agreement as Mastiff's chief executive officer, as well as evidence adduced by Hellmich concerning Holley's role with Mastiff), they were "bound to the arbitration clause of the Loan Agreement[.]" *Id.* at *6-7. As a result, the Central District Court concluded that requiring Hellmich to pursue his claims (including his fraud claim) in court would "defeat [his] contractual right to arbitrate [his] claims against Mastiff," particularly in light of the fact that his claims concerned the "misleading statements and omissions that fraudulently induced" him to enter into the Loan Agreement in the first instance. *Hellmich,* 2015 WL 391989 at *7-8. Finally, the Central District Court concluded that Hellmich had made "detailed allegations" and "provided some documentary evidence that Holley, Martin, and Stead Martin have treated Mastiff's funds

as their own, comingled Mastiff's funds with their personal funds, secretly diverted Mastiff's funds, failed to maintain an arm's length relationship between themselves and Mastiff, and failed to maintain corporate records." *Id.* at *8. Holley, Martin, and Stead Martin did not "object[] to [Hellmich's] evidence, nor [did] they respond[] with their own evidence except by making conclusory assertions that they are not Mastiff's alter egos." *Id.* As a result, the Court concluded that Holley, Martin, and Stead Martin "ha[d] such a unity of interest that treating them as separate entities for personal jurisdiction purposes in this case would be unjust," and, therefore, that the Central District Court had personal jurisdiction over each of them. *Id.*

### v.    Third Arbitral Award

On January 29, 2015, the arbitrator held a hearing with respect to Hellmich's fraud claims. (Dkt. No. 51, Attach. 6, at 5 [attaching page "4" of Arbitrator's Third Interim Arbitral Award].) Following the hearing, the arbitrator made the following findings of fact (among others): (1) in 2013, Martin and Holley, who were shareholders "and officers or directors" of Mastiff, solicited loans and investments based on false representations that (a) they "had assigned all of their rights, title, and legal interests in the Mastiff Intellectual Property to [Mastiff] such that [Mastiff] solely owned the Mastiff Intellectual Property," and (b) in March 2013, Mastiff filed patent applications "to secure and protect . . . the Mastiff Intellectual Property"; (2) in March 2013, Martin and Holley "falsely induced" a Texas resident, Buttler, to loan $125,000 to Mastiff to cover legal fees and patent applications, and then converted that money "for their personal benefit"; (3) Hellmich "reasonably and justifiably relied" on the same false representations when he made loans to Mastiff; (4) Martin and Holley "knowingly and intentionally converted all of [Hellmich's] loans for their own personal benefit"; (5) Martin and

Holley held out Stead Martin (Martin's wife) as Mastiff's chief financial officer; (6) between January 2013 and August 2014, Mastiff's bank records reflect the receipt of $520,863.96 in deposits, "[a]ll of [which] was nearly immediately expended upon receipt [for] the purchase of recreational vehicles, a luxury golf cart, Broadway show tickets, expensive dinners, X-Box 360 games, and purchases at shopping centers and grocery stores"; (7) during a hearing held on September 9, 2014, Martin and Holley revealed, for the first time, that Mastiff "does not own any intellectual property"; and (8) upon learning that Martin and Holley did not seek patent applications, Hellmich "filed a provisional patent application to protect [Mastiff's] and the shareholders' interest in the Mastiff Intellectual Property."  (*Id.* at ¶¶ 6, 8, 11-12, 15, 23-25.) Based on these findings of fact, the arbitrator concluded that Hellmich established his claim of constructive fraud and awarded him (1) $123,000, representing the principal amount of his loans to Mastiff, plus interest, (2) $499,999 in damages for his fraud claim (the amount demanded in his Verified Complaint), (3) attorneys' fees totaling $150,000, and (4) $39,371.10, representing the "expenses of the arbitration[.]"  (*Id.* at ¶¶ 26-43.)  Moreover, as an equitable remedy to Hellmich in his capacity as Mastiff's lead derivative shareholder, the arbitrator ordered Martin and Holley to assign all of their rights, title, and legal interests "in all Mastiff Intellectual Property" to Mastiff.  (*Id.* at ¶ 45.)

### vi.    Confirmation of Third Arbitral Award

Hellmich filed a petition to confirm the third arbitral award, and, in an order filed March 9, 2015, the Central District Court granted this request.  *Hellmich v. Mastiff Contracting, LLC,*

14-CV-1354, Order (C.D. Cal. filed Mar. 9, 2015).[2]

The Court will not further recite the procedural history of the California action, with which the parties are familiar, except to note that post-judgment discovery proceedings are on-going. *See, e.g., Hellmich,* 14-CV-1354, Order Granting Judgment Creditor's Motion to Compel Judgment Debtor Martin (C.D. Cal. filed Feb. 9, 2017).

## 2. Plaintiff's Opposition Memorandum of Law

Hellmich filed his motion to dismiss on August 17, 2016. (Dkt. No. 51.) Plaintiff's response was due by September 19, 2016; however, he failed to file one. On October 4, 2016, the Court *sua sponte* granted Plaintiff an extension until October 18, 2016, to file a response to Hellmich's motion, and advised him that failure to file a response may result in dismissal of the case. (Text Order, filed 10/4/2016.) In the nearly five months since the Court's Text Order, Plaintiff still has not filed a response (or any other indication that he wishes to prosecute his case).

## II. GOVERNING LEGAL STANDARDS

### A. Dismissals for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d

---

[2]     Hellmich also asked the Central District Court to direct the Clerk of the Court to execute the assignment of the intellectual property at issue because Martin and Holley had not yet complied with this component of the third arbitral award. (*Id.* at 8.) The Central District Court denied Hellmich's request without prejudice. (*Id.*)

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

11

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id*. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion

However, no other materials may be considered where, as here, the plaintiff was represented by counsel.

**B.      Dismissals for Lack of Subject-Matter Jurisdiction**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.

---

to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

      **C.**      **Dismissals Based on *Res Judicata***

      In certain circumstances, "*res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).  Specifically, when a defendant raises *res judicata* as a defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.  *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *accord, Assoc. Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (summary order) ("Dismissal [on *res judicata* grounds] under Federal Rule of Civil Procedure 12(b)(6) is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.") (internal quotation marks omitted).  Otherwise, an argument of *res judicata* is more properly raised in a motion for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

      "Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (alterations in original) (internal quotation marks omitted).  More specifically, *res judicata* precludes a party from

asserting a claim in subsequent litigation if "(1) the previous action involved an adjudication on the merits[,] (2) the previous action involved the plaintiffs or those in privity with them[, and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). "Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 [2d Cir. 1992]). "To determine whether two actions arise from the same transaction or claim, [courts] consider 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *TechnoMarine SA*, 758 F.3d at 499 (quoting *Pike v. Freeman*, 266 F.3d 78, 91 [2d Cir. 2001]).

## III.     ANALYSIS

### A.     Whether Plaintiff's Verified Complaint Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Hellmich's memorandum of law. (Dkt. No. 51, Attach. 1, at 3-5 [Def.'s Memo. of Law].) To those reasons, the Court adds six points.

First, the Court notes that Hellmich has filed his motion on behalf of himself only, and not also on behalf of his co-defendant, Mastiff. The Court also notes that Mastiff is not represented by counsel, and a corporation cannot proceed *pro se* in federal court. *See Jones v.*

*Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot appear *pro se*. . . . Since, of necessity, a natural person must represent the corporation in court, we have insisted that that person be an attorney licensed to practice law before our courts.").  However, the Court possesses the authority to dismiss a *pro se* plaintiff's complaint *sua sponte* on the ground of frivolousness.  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000).  Moreover, to the extent that Hellmich's *res judicata* argument (if successful) deprives the Court of subject-matter jurisdiction, the Court can dismiss a complaint on that ground *sua sponte* pursuant to Fed. R. Civ. P. 12(h)(3).

Second, for purposes of Hellmich's motion, the Court finds the information attached to Hellmich's motion to be integral to Plaintiff's Verified Complaint, which expressly referenced the arbitration proceedings.  Alternatively, the Court takes judicial notice of the California action, which arose from the parties' business relationship and involved (among many other things) Hellmich's Loan Agreement with Mastiff.  *See*, *supra*, Part II of this Decision and Order.

Third, as noted above, Plaintiff has failed to oppose any aspect of Hellmich's motion.  In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.[4]  Here, the unopposed arguments presented by Hellmich meet this modest threshold burden (at the very least).

---

[4]     *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Fourth, Hellmich's Verified Complaint (that is, his demand for arbitration) was filed on July 8, 2014. (Dkt. No. 51, Attach. 3.) Although Plaintiff's Verified Complaint was filed in New York State Supreme Court, Fulton County, on August 12, 2014, while the arbitration in California was on-going but before the first two arbitral awards were confirmed by the Central District Court on January 27, 2015, this fact does not preclude the California proceedings from having *res judicata* effect on this action. *See El-Bey v. New York*, 464 F. Supp. 2d 329, 334 n.2 (S.D.N.Y. 2006) ("[I]t is irrelevant for preclusion purposes that this Court issued its final judgment in the 'prior' action after the 'subsequent' action was filed.") (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 922 F.2d 164, 165-68 [2d Cir. 1991]); *Official Publications, Inc. v. Kable News Co., Inc.*, 811 F. Supp. 143, 146 (S.D.N.Y. 1993) ("[W]here parallel actions are commenced, *res judicata* will attach to the action in which a judgment is first entered."); *see also Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985) ("When the same claim or issue is litigated in two courts, the second court to reach judgment should give *res judicata* effect to the judgment of the first, regardless of the order in which the two actions were filed.").

Fifth, "[r]es judicata . . . appl[ies] to issues resolved by arbitration 'where there has been a final determination on the merits, [even] notwithstanding a lack of confirmation of the award.'" *Daugherty v. Jefferson Cty.*, 13-CV-0491, 2015 WL 4662474, at *3 (N.D.N.Y. Aug. 6, 2015) (Scullin, J.) (quoting *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 [2d Cir. 1997]) (internal quotation marks omitted); *see also*, *Kalyanaram v. New York Inst. of Tech.*, 549 F. App'x 11, 14 n.2 (2d Cir. 2013) (summary order) ("Even if the arbitration award had not yet been confirmed by state courts, it could still have preclusive effect."). As discussed above, the Central

District Court has confirmed (at least) three arbitral awards in favor of Hellmich and, upon its own legal analysis, concluded that (1) Martin (and Holley) was bound to litigate any claims arising out of the "relationship of the parties" in California, and (2) both the arbitral tribunal and the Central District Court had personal jurisdiction over Martin (and Holley) in those proceedings. *Hellmich,* 2015 WL 391989 at *4; *see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations–both subject matter and personal."); *accord, Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012) (summary order).

Sixth, and finally, Plaintiff's Verified Complaint does not plausibly suggest that it concerns any acts or incidents arising subsequent to the commencement of, or the confirmation of, the arbitral proceedings in California. *See TechnoMarine SA*, 758 F.3d at 499 (noting that claims "arising subsequent to a prior action [are] not barred by *res judicata* . . . .") (internal quotation marks omitted). Indeed, Plaintiff's Verified Complaint, although consisting of threadbare and inartfully-pleaded factual allegations, is plainly centered on the alleged breach of Hellmich's fiduciary duties to Mastiff and its shareholders, the rightful ownership of intellectual property underlying Mastiff's business, and the scope of the arbitration and forum selection provisions in Hellmich's Loan Agreement, all of which were being litigated in the California arbitration (and the confirmation of the arbitral awards). It appears that, rather than (or in addition to) litigating the issue of the proper forum and venue for the dispute in the California arbitration, Plaintiff simultaneously sought to forestall the California arbitration by seeking a court order in New York. However, the Court finds no basis to disturb the conclusions reached by the Central District Court in its confirmation of the underlying arbitral awards. *See generally*

*Mitra v. Global Fin. Corp.*, 09-CV-4387, 2010 WL 1529264, at *2 (E.D.N.Y. Apr. 15, 2010) ("The arbitration award and judgment were clearly final determinations of the parties' fee dispute on the merits. Moreover, it is clear that plaintiff now seeks collateral reconsideration of an issue that has already been adjudicated between the parties under the guise of a request for injunctive relief. . . . Accordingly, this action is barred by the doctrines of *res judicata* and collateral estoppel."). Plaintiff's challenges to the Central District Court's judgments are more appropriately directed to the California courts for post-judgment or appellate remedies.[5]

For each of these reasons (as well as those set forth in Hellmich's memorandum of law), the Court concludes that Plaintiff's claims are barred under the doctrine of *res judicata*, and they are therefore dismissed.

**B.     Whether Hellmich Has Established His Entitlement to Costs and Attorneys' Fees**

After carefully considering the matter, the Court answers this question in the negative.

In this case, Hellmich argues that he "was required to retain counsel . . . to remove the action and seek to have it dismissed," and, as a result, "incurred fees and costs related to this matter in the amount of $48,639.33." (Dkt. No. 51, Attach. 1, at 8 [Def.'s Memo. of Law].) In

_____

[5]     Moreover, the Court finds that, to the extent that Plaintiff intended to name Mastiff as a defendant in this case (which, as noted above, appears improper, based on the factual allegations and claims set forth in his Verified Complaint), he has failed to allege facts plausibly suggesting a basis for any claim as against Mastiff. Moreover, to the extent that Mastiff could be said to have asserted claims against Hellmich as a *plaintiff* (which, again, also does not appear to be the case), the Court concludes that any such claims must also be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) because, as noted above, Mastiff is not represented by counsel. In a Text Order filed on April 1, 2016, Magistrate Judge Dancks directed that Mastiff "shall have any . . . counsel file a notice of appearance with the Court by" May 8, 2016. (Text Order, filed 4/1/2016.) Since that time, Mastiff has neither retained counsel nor expressed an intention to do so.

support of this request, Hellmich filed a declaration (Dkt. No. 51, Attach. 10 [Hellmich Decl.])

and what appears to be an invoice for legal services from the law firm he retained to represent

him in this case (Dkt. No. 51, Attach. 9 [Invoice]).  In his declaration, Hellmich asserts that he

"ha[s] previously worked with [the law firm he retained] and know[s] them to be very competent

attorneys," and that he "can attest that the fees and costs in [the invoice] are true and accurate

and are for costs I incurred with [the law firm] in defendant this action."  (Dkt. No. 51, Attach.

10, at ¶ 3.)

  The Court concludes that Hellmich has not established his entitlement to costs and

attorneys' fees incurred in conjunction with this case.  In support of his request, Hellmich cites

the arbitrator's third arbitral award, which concluded that Martin and Holley "are each a Mastiff

alter ego" and that they were therefore jointly and severally liable for "the monetary awards

issued herein."  (Dkt. No. 51, Attach. 6, at ¶ 39.)  The third arbitral award cites *Rhino Linings of*

*Poway, Inc. v. Rhino Linings USA, Inc.*, No. D036619, 2002 WL 1340879, at *9 (Cal. Ct. App.

June 19, 2002), an unpublished decision which recited the point of law that "a nonsignatory to

[a] contract may be liable for contractual attorney fees if the plaintiff establishes alter ego

liability when the defending party that signed the contract was a corporation."  California Civil

Code § 1717 (which Hellmich cited in support of his demand for attorneys' fees when he

commenced arbitration proceedings) provides, in part, that, "[i]n any action on a contract, where

the contract specifically provides that attorney's fees and costs, which are incurred to enforce that

contract, shall be awarded . . . the prevailing party, then the party who is determined to be the

party prevailing . . . shall be entitled to reasonable attorney's fees in addition to other costs."  Cal.

Civ. Code § 1717(a).

The Loan Agreement provides that

> [i]n the event that this Note is placed in the hands of an attorney at law for collection after maturity or upon default or in the event that proceedings at law, in equity, or in a tribunal are instituted in connection herewith, or in the event that this Note is placed in the hands of an attorney at law to enforce any of the rights or the agreements contained herein, the undersigned shall pay all costs of collecting or attempting to collect this Note or protecting or enforcing such rights, including without limitation, reasonable attorneys' fees. . . . For purposes of this section, costs shall include, without limitation, attorneys' fees, costs and expenses incurred in the following: (i) post-judgment motions: (ii) contempt proceedings; (iii) garnishment, levy and debtor and third-party examinations; (iv) discovery[;] and (v) bankruptcy litigation.

(Dkt. No. 51, Attach. 2, at 3 [attaching page "2" of Loan Agreement].) As an initial matter, it is not clear that this case falls within any of the specific categories of proceedings enumerated in the Loan Agreement's attorneys' fees provision (and, by requesting attorneys' fees and costs, Hellmich only implicitly argues that it does).

Even assuming that it does, however, the Court concludes that Hellmich has not adduced sufficient evidence to support his request. "The starting point for determining reasonable attorneys' fees under [California Civil Code §] 1717 is the 'lodestar.'" *Universal Elec., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1334 (C.D. Cal. 2015) (quoting *Becker v. Wells Fargo Bank, N.A.*, 10-CV-2799, 2014 WL 7409447, at *6 [E.D. Cal. Dec. 30, 2014]). The lodestar "is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Becker*, 2014 WL 7409447, at *6 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 [1983]). In calculating reasonable attorneys' fees, the court also considers numerous other factors, including the following: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services

properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases." *Id.* at *6 (quoting *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1341-42 [9th Cir. 1986]); *accord, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2007). "[T]he party seeking attorneys' fees bears the burden of submitting detailed time records which justify the hours spent working on the claims." *Becker*, 2014 WL 7409447, at *7 (internal quotation marks omitted).

Here, Hellmich has submitted only (1) a purported invoice from the law firm he retained, reflecting a "Balance Due" of $48,639.33 as of July 31, 2016, with no further explanation or itemization of that total (Dkt. No. 51, Attach. 9), and (2) his declaration, in which he asserts that he "know[s the law firm] to be very competent attorneys" and that "the fees and costs contained in [the invoice] are true and accurate and are for costs . . . incurred . . . in defending this action" (Dkt. No. 51, Attach. 10). These submissions contain virtually no data that would inform the Court's consideration of several of the relevant factors noted above, and the Court is therefore unable to conclude that the amount Hellmich requests is reasonable based upon those factors; nor, for that matter, can the Court ascertain whether a departure from the requested amount is appropriate under the circumstances.[6] Because Hellmich's documentation does not delineate the

_____

[6]     The Court notes, however, that it is skeptical that attorneys' fees totaling over $48,000 is reasonable, given that the substantive steps taken in this case are largely limited to an eight-page memorandum of law (plus exhibits) and a three-paragraph declaration (both

number of hours retained counsel invested in litigating this case, how that time was spent, the hourly rates charged, or any costs incurred, the Court concludes that an award of attorneys' fees and costs is not merely inappropriate, but impossible. *See, e.g., Joe Hand Promotions, Inc. v. Be*, 11-CV-1333, 2011 WL 5105375, at *7 (N.D. Cal. Oct. 26, 2011) ("[C]ounsel has provided no documentation to justify recovery of attorney's, paralegal or administrative fees, such as a curriculum vitae or resume, billing and cost records . . . or other relevant information."); *Autodesk, Inc. v. Flores*, 10-CV-1917, 2011 WL 337836, at *10 (N.D. Cal. Jan. 31, 2011) (denying party's request for costs and attorneys' fees where it "ha[d] not submitted billing records or a table of costs for the Court's review," and explaining that, "[w]ithout this information, the Court cannot determine whether the fees and costs requested are reasonable"); *Zynga Game Network Inc. v. Erkan*, 09-CV-3264, 2010 WL 3463630, at *2 (N.D. Cal. Aug. 31, 2010) (denying application for attorney's fees "for lack of clarity and specificity" under lodestar

---

apparently drafted by Hellmich, then proceeding *pro se*, in support of his motion to dismiss). Hellmich's retained counsel filed (1) a notice of appearance on February 24, 2015 (Dkt. No. 9), (2) a two-page letter motion on March 9, 2015 (Dkt. No. 13), (3) a two-page letter on March 17, 2015 (Dkt. No. 20), (4) a letter motion requesting to withdraw as counsel of record on January 12, 2016 (Dkt. No. 38) (which was denied by Magistrate Judge Dancks via Text Order for lack of a notarized confirmation from Hellmich and certificate of service upon Hellmich [Text Order, filed 1/14/2016]), and (5) a second motion to withdraw as counsel of record, filed on February 23, 2016 (consisting of a three-page letter and an eight-paragraph affidavit from Hellmich, which was granted) (Dkt. No. 44). In its second motion to withdraw, retained counsel noted that it also represents Mastiff. (Dkt. No. 44 at 1 [Letter Motion to Withdraw, dated 2/23/2016].) Retained counsel explained that, at the outset of the case, it had "prophylactically entered an appearance on behalf of Mastiff" because the "confused nature of the Complaint" suggested that Mastiff was named as a defendant. (*Id.*) In light of retained counsel's withdrawal from the case, and Hellmich's assertion that he "eventually directed [retained counsel] to withdrawal as a means to conserve valuable resources," nothing in the record suggests that retained counsel assisted in the preparation of Hellmich's motion to dismiss. Simply stated, there is little record evidence supporting an award of attorneys' fees of over $48,000 (the amount sought by Hellmich and the amount appearing on retained counsel's invoice to Hellmich).

method where, *inter alia*, plaintiff's failed to "attach actual billing records" documenting the number of hours worked); *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009) (noting the "well-settled [rule] that a fee application must be supported by contemporaneous time records or else it can be denied," and denying party's request for attorneys' fees); *Garden City Boxing Club, Inc. v. Puebla's Grocery, Inc.*, 06-CV-4735, 2007 WL 4243319, at *5 (E.D.N.Y. Nov. 29, 2007) (collecting cases denying requests for attorneys' fees where no documentation is submitted in support of the request); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (noting that "counsel can meet his burden [in support of his application for fees]–although just barely–by simply listing his hours and identify[ing] the general subject matter of his time expenditures") (internal quotation marks omitted).

For each of these reasons, Hellmich's request for an award of attorneys' fees and costs is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Hellmich's motion to dismiss Plaintiff's Verified Complaint (Dkt. No. 51) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant Hellmich's request for an award of costs and attorneys' fees is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's Verified Complaint (Dkt. No. 1, Attach. 1) is **<u>DISMISSED</u>** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant Hellmich and close this case.

Dated: March 10, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge